## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JEFFREY W. TERRY, et al<br><br>v.<br><br>CHICAGO BRIDGE & IRON COMPANY,<br>CBI SERVICES, INC., CB&I CONSTRUCTION<br>SERVICES, LLC, CB&I SERVICES, LLC, and<br>STONE & WEBSTER SERVICES, LLC. | CASE NO.: 4:17-cv-00367 |

## UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL OF CLAIMS WITH PREJUDICE

Plaintiffs Jeffrey Terry, Tony Babb,  Jason Fowlkes, Robert McDaniel, Matthew Clippard, Steven Turner, Eric Poe, and Kenneth Luke ("Named Plaintiffs"), individually, and the Opt-In Plaintiffs (collectively, "Settlement Class Members"), and Defendants Chicago Bridge & Iron Company, CBI Services, Inc., CB&I Construction Services, LLC, CB&I Services, LLC and Stone &Webster Services, LLC (collectively "Defendants" or "CBI") (Settlement Class Members and Defendants together, the "Parties") have entered into a Settlement Agreement. Pursuant to Federal Rule of Civil Procedure 41(a)(2), the Named Plaintiffs file this unopposed motion to request approval of their settlement and dismissal of Settlement Class Members' claims.

The Parties have entered into the Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation. For these reasons, the Parties jointly request the Court approve their Settlement Agreement and dismiss the Settlement Class Members' claims with prejudice. The terms of the Settlement Agreement are confidential, and the Settlement Agreement is filed under seal contemporaneously.

1.    **INTRODUCTION**

The Settlement Agreement attached to this motion has already been agreed upon and executed by the Parties. See Ex. 1 (Settlement Agreement, filed under seal). This is not an opt-in settlement. The Settlement Class is only made up of those Plaintiffs and Opt-in Plaintiffs who joined this case prior January 1, 2022.  This settlement covers 2,254 individuals who elected to participate in this matter.

Under the Settlement Agreement, the amounts have been allocated to each Settlement Class Member based upon their time alleged to have worked for CBI by workweek. If the Settlement Agreement is approved, the Settlement Class Members will receive a Notice explaining the nature, terms and scope of the Settlement and a check representing the amount of compensation they are due. *See* Ex. 1 at ¶¶ 5(n), 7(c). The agreed settlement administrator ("ILYM Group") will send a check reflecting each Settlement Class Members' portion of the settlement. *Id.* at ¶¶ 5(t), 9. All Settlement Class Members will receive a check in the mail according to the payment and notice plan set forth in the Settlement Agreement.

Class Counsel submits that this Settlement Agreement represents a fair and reasonable resolution of a long running dispute regarding the legality of CBI's pay practices and should be approved.

2.    **BACKGROUND**

Named Plaintiff Jeffrey Terry filed this putative FLSA collective action lawsuit on September 7, 2017.  *See* Doc. 1. The Complaint was amended to add Named Plaintiffs Tony Babb, Jason Fowlkes, Robert McDaniel, Matthew Clippard, Steven Turner, Eric Poe, and Kenneth Luke and state law claims. *See* Doc. 28 (FAC); Doc. 123 (SAC). In each, they alleged CBI misclassified them and the Putative Class Members and paid them the same hourly rate for all hours worked, even those in excess of 40 per week, in violation of the FLSA. They sought back wages, liquidated damages, attorney's fees, and

costs. CBI denies the allegations in the pleadings, including that the Settlement Class Members were its employees and that they are entitled to any relief. *See* Doc. 126.

The Parties initiated good faith settlement discussions and CBI provided information to allow Class Counsel to calculate class wide potential damages. Additionally, the Parties mediated twice with experienced wage-and-hour mediator Annie Estevez. While the case did not settle at mediation, the Parties made progress and through continued negotiations reached an agreement in principle in which CBI agreed to pay to settle the claims of the Named Plaintiffs and those Opt-in Plaintiffs who filed consents by January 1, 2022 (the "Settlement Class Members"). *See* Ex. 1 at ¶ 5(v). The Parties finalized the Settlement Agreement and now seek the Court's approval.

3.    **KEY TERMS OF SETTLEMENT**

The proposed settlement obligates CBI to pay a maximum settlement amount to settle the claims in this Action ("Gross Settlement Amount") by issuing checks to all Settlement Class Members. *Id.* at ¶ 8. The Gross Settlement Amount means the amount CBI shall pay under the Settlement Agreement, but excludes the employer's share of taxes. *Id.* at ¶ 5(k). The "Net Settlement Amount" is the Gross Settlement Amount minus the Attorneys' Fee Award, the Cost Award, the Service Award, and the Administrative Costs. *Id.* at ¶ 5(m).

The Net Settlement Amount will be divided among the Settlement Class Members based on the compensation received and weeks worked for or on behalf of CBI during the relevant period. *Id.* at ¶ 10. By signing the Settlement Agreement, the Named Plaintiffs grant a general release to CBI, releasing any and all claims, known or unknown, existing or that could exist as of the date of the Settlement Agreement. *Id.* at ¶ 5(q). The remaining Settlement Class Members shall release CBI from all federal, state, or local wage-related claims with respect to the time that he or she worked for CBI from a period of 3 years before the Settlement Class Member joined this Action by filing his or her written consent with the Court to the date of the Approval Order. *Id.*

4.    **LEGAL STANDARD**

The Parties now seek the Court's approval of their Settlement. The Settlement Agreement represents a fair and reasonable compromise of a *bona fide* dispute concerning the legality of CBI's compensation practices with respect to the Settlement Class Members during the relevant period.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir. 1982)). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Id.* When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a *bona fide* dispute over the FLSA's provisions. *See Lynn's Food Stores,* 679 F.2d at 1355.

5.    **THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT AND DISMISS THE SETTLEMENT CLASS MEMBERS' CLAIMS.**

The Settlement Agreement represents a fair and reasonable compromise of a bona fide dispute concerning the legality of CBI's compensation practices with respect to the Settlement Class Members.

a.    **A Bona Fide Dispute Existed Between the Parties.**

The Court can approve a settlement where there is a "bona fide dispute" amongst the parties. *See, e.g., Bodle v. TXL Mortg. Corp.,* 788 F.3d 159, 163 (5th Cir. 2015). "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Hous. Auth. of City of El Paso,* No.

4

EP-10-CV-109-KC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011). "An actual dispute over the amount of overtime compensation due to an employee [can be] sufficient to create a bona fide dispute for purposes of this factor." *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *1 (S.D. Tex. Jan. 31, 2018). In addition, a dispute as to whether employees were "misclassified as exempt" from the FLSA's protections can create a *bona fide* dispute. *Id.* at *2.

In the instant case, the Parties fiercely contested the claims and defenses asserted. In fact, CBI filed a motion for summary judgment early in the case, arguing Named Plaintiff Terry's administrative award from the Texas Workforce Commission barred his FLSA litigation. Doc. 23-1. The Court denied CBI's motion, leading CBI to file a mandamus to the Fifth Circuit. *See In Re: Chicago Bridge & Iron, et al*, No. 17-20748 (5th Cir. Nov. 28, 2017). The mandamus was denied, and CBI sought rehearing en banc. *Id.* This too was denied. *Id.* Shortly thereafter, the court granted conditional certification on March 8, 2018. Doc. 108. The parties then engaged in significant discovery disputes regarding the opt-in plaintiffs and corporate representative deposition. *See* Docs. 194, 197, 209, 210, 214-218. The Parties clearly spent nearly three years actively litigating this action. The petition of bankruptcy filed by McDermott International, Inc. and affiliates that delayed resolution of this action. See Doc. 224. Once the stay was lifted, the Parties resumed their efforts to resolve the action, engaging in mediation and extensive negotiations before ultimately resolving the claims of 2,254 named and Opt-in Plaintiffs.

The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue. The Parties worked to resolve various complex, disputed issues, such as issues regarding damage calculations. If this case was not contemporaneously settled, there would undoubtedly be extensive future work to come, including additional dispositive motions, depositions, associated discovery disputes including possible subpoenas to a substantial number of third-parties, questions regarding applicability of the FLSA,

good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. Accordingly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and recognized that their settlement represented a compromise of the range and uncertainty of their damages.

Finally, both Named Plaintiffs and Class Counsel believe that this settlement is in the best interest of the Settlement Class Members. As such, the current Settlement Agreement before the Court is the result of a *bona fide* and contested dispute where serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved.

**b.   The Settlement is Fair and Reasonable.**

"There is a 'strong presumption in favor of finding a settlement fair.'"  *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)).  In addition, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

Here, the Settlement Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Counsel for all Parties have considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and in this case were particularly well informed as to the facts and circumstances of the Lawsuit after extensive discovery on all issues over the life of this litigation. *See Cotton v. Hinton*, 559 F. 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed

6

settlement was reasonable and adequate based on "comprehensive knowledge of the facts and legal issues"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted); *see also Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

This is the agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("[T]he court cannot modify the bargained-for terms of the [class-action] settlement agreement.").

## 6.    THE COURT SHOULD APPROVE THE ATTORNEY FEES AND COSTS

The Court may begin its analysis of a contingent attorney fee by looking at fees awarded in other courts, particularly in the Fifth Circuit. The Fifth Circuit recognizes that contingency fees are desirable—particularly in common fund cases like this one—because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) ("district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'").

a. **The Attorney Fees Are Reasonable.**

In evaluating a contingency fee award, the Court may look at the factors set forth in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974) overruled on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939 (1989). The *Johnson* factors include the following: (1) the time and labor required; (2) the novelty and difficulty of the questions posed; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; and (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Regarding the time and efforts required of Class Counsel (factors 1 and 7), achieving the Settlement required significant effort by Class Counsel. At the outset of the representation, Class Counsel investigated and evaluated the claims, the damages to which the potential collective members were entitled, and the propriety of collective action certification. Class Counsel obtained and reviewed documents from the Named Plaintiffs and from publicly available sources. Class Counsel also conducted in-depth interviews of Plaintiffs, negotiated an ESI protocol, prepared and served written discovery requests, engaged in extensive discovery, took depositions, prepared a detailed mediation brief, analyzed payroll data to perform a detailed damages analysis, attended two full-day mediations, and negotiated the settlement.

Prior to settlement, Class Counsel vigorously litigated these claims for nearly 3 years. The Parties engaged in motion practice, depositions, discovery production and review. Class Counsel expended significant resources to investigate, file, litigate, and attempt to resolve the matter. Moreover, the requested fee is not based solely on time and effort already expended. It should also compensate Settlement Class Counsel for time that will be spent administering the settlement in the future. In

Class Counsel's experience, administering settlements of this nature requires an ongoing commitment. As is common in wage and hour collective actions, Settlement Class Counsel expects to respond to inquiries from the Settlement Collective Members after approval of the Settlement.

Next, the separately-negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the agreements between Settlement Class Counsel and their Counsel provides for a contingency fee of the gross settlement amount. Class Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Class Counsel would have carried various advanced costs, as well as unrecoverable time spent. Class Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery.

Next, Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g., Hughes*, 878 F.3d 183 (reversing trial court's grant of summary judgment that a day-rate met the salary-basis test); *Roussell*, 2011 WL 4067171 (affirming jury verdict in FLSA collective action); *Belt*, 444 F.3d 403 (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, both Bruckner Burch PLLC and Josephson Dunlap, LLP have a national docket of FLSA cases, with litigation across the United States, not only in Texas, but also in California, Illinois, Louisiana, Montana, New Mexico, Ohio, Oklahoma, Pennsylvania, South Dakota, Utah, New York, New Jersey, Virginia, Washington, and elsewhere. In recent years, Class Counsel's joint docket has carried around or over 200 cases involving collective action claims for oilfield workers.

Class Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. *Id.* Class Counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such

as this. Indeed, one court noted recently that Bruckner Burch's lawyers were "among the most experienced and best regarded in this specialized practice area." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015). In all, Class Counsel has secured millions of dollars in settlements in FLSA cases for their clients. Further, Class Counsel's acceptance of this case (factor 4), and the time that it has taken to work this case, has precluded time that they could have spent pursuing other matters.

Finally, "the most critical factor in determining a fee award is the degree of success obtained" (factor 8). *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because CBI vigorously contested the Settlement Class Members' claims and denied they were improperly paid, underpaid, or that any alleged damages are owed. The Settlement allows the Settlement Class Members to recoup a significant amount of their claimed back wages. This is especially true when weighing a few of the highly disputed issues: 1) the number of hours Settlement Class Members actually worked; 2) whether Settlement Class Members were paid overtime for any hours worked over forty in a workweek; 3) whether Settlement Class Members were exempt under one or more exceptions to the FLSA's overtime requirements; 4) whether Settlement Class Members were properly classified as exempt; 5) whether CBI's alleged FLSA violations were made in good faith; and 6) whether CBI's alleged FLSA violations were willful.

For these reasons, the Parties believe the fee is reasonable and necessary in this case. Class Counsel also seeks reimbursement of their litigation expenses, as identified in the confidential settlement agreement.

**b. The Contingency Fee Percentage is Appropriate.**

Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006). In FLSA cases such as this, the "customary contingency" in the Fifth Circuit is within the

range of 35 to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); see, e.g., *See Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving 40% fee in FLSA settlement); *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (same); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (same); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same); *Sarabia v. Spitzer Industries, Inc.*, No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) (same); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *Heffernan Bryant v. United Furniture Indus., Inc.*, No. 1:13CV246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (same); *Wolfe v. Anchor Drilling Fluids USA, Inc.*, Case No. 4:15-cv-1344 (S.D. Tex. Dec. 7, 2015) (Hoyt, J.) (40% fee). The percentage agreed to by parties is well within the norms of approved fees.

c. **Settlement Class Counsels' Attorney Fees are Part of the Settlement Agreement Between the Parties.**

As part of the settlement, the Parties have agreed that Settlement Class Counsel is entitled to a total of a percentage of the gross settlement amount. This is the agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("[T]he court cannot modify the bargained-for terms of the [class-action] settlement agreement."); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied*

*sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526, at *3 (E.D. La. Jan. 23, 1996) (overruling magistrate judge's modification to consent judgment because courts lack authority to modify a settlement agreement).

Because the Parties have made the amount of and provisions regarding payment of their attorney fees an unseverable part of their agreement with CBI, the Parties stress that a rejection of this (or another portion) of their confidential Settlement Agreement will result in a failure of the Parties' agreement and the resumption of litigation. They ask the Court to recognize the reasonableness of the attorney fees given the efforts of Class Counsel and the agreements of all parties involved.

### d.  The Costs are Reasonable

In addition to being entitled to reasonable attorneys' fees, the relevant wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b) ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney' s fees as may be allowed by the court…" ). Class Counsel's costs are $50,000, which includes reasonable out-of-pocket expenditures such as filing fees, records, copies, postage, travel, three mediations, meetings, and PACER/Westlaw.

All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement.  The request of costs is intended to cover any additional expenses incurred in this case.

### 7.    The Service Awards are Reasonable

The proposed service awards are intended recognize the Named Plaintiffs' initiative and efforts on behalf of the collective action members, their execution of a general release (as opposed to the limited releases executed by the remainder of the Settlement Class Members) and the time and

effort they contributed to this lawsuit and the settlement. The requested service awards here are reasonable, and Defendants do not object to the same.

Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See*, *e.g.*, *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 WL 12866212, at *6 (W.D. Tex. Dec. 23, 2015) (approving service payment award of $7,500 in FLSA collective action); *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving incentive award to named plaintiffs because "Plaintiffs' commitment undoubtedly led to the proposed settlement fund."). *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases.").

The Named Plaintiffs took a substantial risk in bringing the claims relating to Defendants' alleged FLSA and state law violations. In doing so, they faced potential retaliation and blackballing from prospective employers in the oil and gas industry who, by merely performing a quick Google search of their names, may quickly see they sued their former employers for back wages. Because the Named Plaintiffs took significant personal risks in representing the interests of the FLSA and state law Class Members, and worked diligently to ensure the Settlement Class Members could recover the wages they are allegedly due, the proposed service awards agreed to by the Parties is reasonable.

## 8.    CONCLUSION

For the foregoing reasons, the Parties request that the Court approve their Settlement, including all of the terms set forth in the Settlement Agreement, and dismiss the Settlement Class Members' claims with prejudice.  A proposed order is attached hereto.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: _/s/    Rex Burch_
**Richard J. (Rex) Burch**
Texas Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com


**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 2407844
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com


**ATTORNEYS FOR THE SETTLEMENT
CLASS MEMBERS**

**CERTIFICATE OF CONFERENCE**

I hereby certify that prior to filing the instant Motion, I conferred with Defendants' Counsel, who confirmed Defendants are unopposed with the requested relief.

*/s/ Rex Burch*
**Richard J. (Rex) Burch**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2022, I served the foregoing pleading on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Rex Burch*
**Richard J. (Rex) Burch**